## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MATTIE LILLARD,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. ADC-20-300** |
| | § | |
| **TECH USA, INC.** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

Plaintiff Mattie Lillard ("Lillard") and Defendant Tech USA, Inc. and its affiliates including, without limitation, Tech USA, LLC (collectively "Tech USA") enter into this Confidential Settlement Agreement and Release ("Agreement"), subject to approval by the Court (as defined below).

### I.
### RECITALS

1.      Lillard filed the above-styled collective action lawsuit against Tech USA on February 4, 2020 (the "Lawsuit"). Lillard asserts in the Lawsuit that Tech USA improperly paid her and other employees straight time for overtime in violation of the Fair Labor Standards Act ("FLSA"). Although not set forth in the Lawsuit, Lillard also claims that Tech USA misclassified her and others alleged to be similarly situated as exempt from the overtime requirements of the FLSA and improperly docked pay.

2.      Class Counsel (as defined below) has made a thorough and independent investigation of the facts and law related to the allegations in the Lawsuit. In agreeing to the terms of this Agreement, Class Counsel has considered: (a) the facts developed during the litigation of the Lawsuit and the law applicable thereto; (b) the facts developed from speaking with the Opt-Ins (as defined below); (c) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Tech USA; and (d) the desirability of consummating a settlement according to the terms of this Agreement. The Class Representative (as defined below) has also concluded that the terms of this Agreement are fair, reasonable, and adequate, and that it is in the best interest of the Opt-Ins to settle their claims against Tech USA pursuant to the terms of this Agreement.

3.      Tech USA denies the allegations in the Lawsuit, makes no admissions whatsoever, and denies that it engages, or has engaged, in any wrongdoing at all, or that it violates, or has violated, any law or regulation in any respect, including, but not limited to, the FLSA. Tech USA is entering into this Agreement because, among other things, it will eliminate the burden, risk, and expense of further litigation.

4.      Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession, or indication that the Released Parties (as defined below) have (i) violated any federal, state, or local law or any right or obligation that they, collectively or individually, may have owed the Opt-Ins and/or (ii) prejudiced the Released Parties' positions that they have not violated nor abridged any such law, right, or obligation.

5.      The Settling Parties (as defined below) recognize that the Agreement will not become operative until the Court enters a Judgment (as defined below) and the Judgment becomes a Final Judgment (as defined below). In the event the Court does not enter a Judgment or the Judgment does not become a Final Judgment, this Agreement (except for those provisions relating to non-admissibility and no admission of liability as set forth herein) shall be deemed null and void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or utilized by any of the Settling Parties for any purpose whatsoever. Further, the negotiation, terms, and entry of this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, and all other applicable rules of evidence.

6.      This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Lawsuit, the Wage and Hour Released Claims (as defined below), and the General Released Claims (as defined below) upon and subject to the terms and conditions set forth herein.

7.      In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Settling Parties, IT IS HEREBY AGREED, by and between the undersigned, subject to the conditions set forth herein, that the General Released Claims and the Wage and Hour Released Claims of the Opt-Ins are settled, compromised, and dismissed, on the merits and with prejudice.

## II.
### DEFINITIONS

In addition to the terms defined elsewhere in the Agreement, the following terms shall have the meanings ascribed to them below:

a.      "Class Counsel" means JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC and their attorneys, who jointly and severally warrant and represent that no other law firms or attorneys are serving as Class Counsel in any respect whatsoever.

b.      "Class Period" means, for each of the Opt-Ins, the three-years from the date he or she filed his or her notice of consent through the date on which the court grants the Unopposed Motion for Approval of Settlement and Dismissal of Lawsuit with Prejudice ("Approval Motion").

c.      "Class Representative" means Lillard.

d.      "Confidential General Release" means the separate Confidential General Releases attached to this Agreement at Exhibit 1 through Exhibit 5 that the Opt-Ins shall execute concurrently with this Agreement.

e.      "Cost and Fee Award" means the award of costs and attorneys' fees that the Court authorizes to be paid to Class Counsel from the Maximum Settlement Amount (as defined

below) for the services provided to the Opt-Ins. The Cost and Fee Award shall be comprised of a Fee Award of up to 40% of the Maximum Settlement Amount. The Cost and Fee Award will compensate Class Counsel for all costs incurred and all work performed in the Lawsuit as of the date of this Agreement as well as all of the work remaining to be performed through the Effective Date (defined below), including, but not limited to, negotiating the Agreement, securing final Court approval of the Agreement, and obtaining the Final Judgment. The Cost and Fee Award shall be paid to Class Counsel from the Maximum Settlement Amount. Tech USA shall issue a Form 1099 to Class Counsel for the full amount of the Cost and Fee Award and a Form 1099 shall also issue to each Opt-In for their pro-rata share of the Cost and Fee Award.

       f.     "Court" means the United States District Court for the District of Maryland.

       g.     "Effective Date" means the date on which the Judgment becomes a Final Judgment.

       h.     "Final Judgment" means: if any appeal from or challenge to the Judgment is perfected, thirty (30) days from the first date upon which all such appeals are finally exhausted without any modification of the Judgment inconsistent with the terms of this Agreement; or (b) if no such appeal is perfected, the expiration date of the time for the filing or noticing of any appeal from the Judgment approving the Agreement (i.e., thirty (30) days after entry of the Judgment).

       i.     "General Released Claims" means the claims listed in each Opt-In's Confidential General Release.

       j.     "Judgment" means the judgment to be rendered by the Court pursuant to this Agreement in which the Court dismisses the Lawsuit with prejudice.

       k.     "Maximum Settlement Amount" means the maximum amount that Tech USA shall pay under the terms of this Agreement in exchange for the release of all Wage and Hour Released Claims by the Opt-Ins, which is the sum of Thirty-Six Thousand Two Hundred Fifty Dollars and Zero Cents. ($36,250.00). The Maximum Settlement Amount includes the Cost and Fee Award and the Settlement Payments (defined below). In no event shall the amount owed by Tech USA exceed the Maximum Settlement Amount. The Maximum Settlement Amount excludes Tech USA's share of FICA and FUTA payroll taxes and other applicable taxes under state law, if any.

       l.     "Negotiation Period" means the 120-day period after the date on which Tech USA mails the Settlement Checks (as defined below), during which each of the Opt-Ins negotiates his or her Settlement Check.

       m.     "Net Settlement Amount" means the Maximum Settlement Amount minus the Cost and Fee Award. The Settling Parties acknowledge that all of these amounts are subject to the Court's approval.

       n.     "Opt-Ins" means Mattie Lillard, Rijad Alibasic, Haley Perry, Courtney Samms, and Arielle Evans.

o.      "Released Parties" means Tech USA and each of its current, former, and future affiliates (including, without limitation, Tech USA, LLC), investors, parents, subsidiaries, related entities, predecessors, successors, divisions, joint ventures and assigns, holding companies, and each of their respective past or present directors, officers, agents, employees, partners, members, contractors, sub-contractors, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual, limited liability company, and corporate capacities.

p.      "Settlement Check(s)" means the negotiable instrument issued to the Opt-Ins that represents the Settlement Payment in exchange for executing the Agreement and Confidential General Release.

q.      "Settlement Payment(s)" means the payment that each Opt-In shall be entitled to receive pursuant to the terms of this Agreement and will receive via the Settlement Check.

r.      "Settling Parties" means Class Counsel, Tech USA, and the Opt-Ins.

s.      "Tech USA's Counsel" means MORGAN, LEWIS & BOCKIUS LLP and its attorneys. Tech USA is also represented by local counsel in the Lawsuit, Kramon & Graham, P.A. of Baltimore, and its attorneys.

t.      "Wage and Hour Released Claims" means any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against any of the Released Parties for alleged unpaid overtime wages, straight time pay, late pay, minimum wages, miscalculation of bonus payments, misclassification, docking, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, attorneys' fees, punitive damages, treble damages, restitution and equitable relief, interest, litigation costs, restitution, or other compensation and relief, arising under the FLSA or any other wage/hour-related federal, state, or local law, statute, rule, ordinance, regulation, constitution, court-created/common law, and/or agreement with respect to the various times that the Opt-Ins performed work for or on behalf of any of the Released Parties.

### III.
### THE SETTLEMENT

1.      **Consideration to Opt-Ins**

1.1.    Each Opt-In shall receive a Settlement Check in an amount equal to his or her Settlement Payment. The amount of each Settlement Payment shall be determined by Class Counsel subject to Tech USA's review and approval (which approval shall not be unreasonably withheld). Class Counsel informed Tech USA of the amount of the Settlement Payment to each Opt-In on September 11, 2020, which settlement amounts are approved by Tech USA.

1.2.    Fifty percent of each Settlement Payment shall be deemed payment in settlement of claims for alleged liquidated damages, penalties, and all other non-wage income. A Form 1099 shall issue to each of the Opt-Ins for this amount. The other fifty percent of each Opt-In's Settlement Payment will be characterized as back wages, and Tech USA will issue a W-2 to each Opt-In for this amount.

1.3.     Tech USA shall issue the Settlement Checks to the Opt-Ins and will report payment of each Settlement Check to all relevant state and federal government authorities, including the Internal Revenue Service, as detailed below.

1.4.     As additional consideration in support of releasing the General Released Claims, Tech USA agrees to waive its right to seek and its entitlement to outside counsel and inside counsel attorneys' fees in connection with its motion to compel arbitration filed in the Lawsuit and granted by the Court under Doc No 24.

2.     **Taxes**

2.1.     Fifty percent of each Opt-Ins' Settlement Payment shall not be subject to withholdings and deductions, which will result in the net amount equaling the gross amount of such fifty percent, and shall be reported in the year of payment as non-wage income to the Opt-In on a Form 1099 and on such other state or local tax reporting forms as may be required by law.  The remaining fifty percent of each Opt-Ins' Settlement Payment shall be subject to withholdings and deductions, which will result in the net amount being less than the gross amount, and shall be reported in the year of payment as wage income to the Opt-In on a Form W-2 and on such other state or local tax reporting forms as may be required by law.  Tech USA shall be responsible for issuing the appropriate tax forms to the Opt-Ins.  The Opt-ins shall each be solely responsible for the reporting and payment of his/her respective share of any federal, state, and/or local income or other taxes, if any, on the Settlement Payments.  Each Opt-In agrees to hold the Released Parties harmless and to indemnify the Released Parties from any claims, assessments, demands, penalties, and interest found to be owed as a result of the payment of his or her Settlement Payment.

2.2.     Class Counsel shall be solely responsible for any federal, state, and/or local income or other taxes due or owing related to the payment of the Cost and Fee Award.  Class Counsel agrees to hold the Released Parties harmless and to indemnify the Released Parties from any claims, assessments, demands, penalties, and interest found to be owed as a result of the payment of the Cost and Fee Award.

2.3.     The Released Parties make no representation, and it is understood and agreed that the Released Parties have made no representation, as to the taxability of any Opt-In's Settlement Payment and/or as to the taxability of the Cost and Fee Award.

2.4.     Class Counsel agrees to provide Tech USA with completed Forms W-9 for Class Counsel's law firm and for the Opt-Ins within ten (10) business days of the execution of this Agreement.

3.     **Dismissal of the Lawsuit and Sealed Filings**

3.1.     If for any reason the Court does not approve this Agreement, fails to enter the Judgment, the Judgment does not become a Final Judgment, or this Agreement is lawfully terminated, Tech USA retains the absolute right to proceed with individual AAA arbitrations with the Opt-Ins in accordance with the Court's Order dated August 21, 2020 compelling arbitration in the Lawsuit (the "Order"), the propriety of collective action certification no longer being an issue under the Order; furthermore, Tech USA shall maintain all of its defenses, and this Agreement and the negotiations (including, without limitation, any and all emails, other writings of any nature, and

other communications whatsoever, whether verbal or otherwise), leading up to it will be inadmissible and kept confidential by Class Counsel and the Opt-Ins to the maximum extent permissible by law.

3.2.    Class Counsel shall prepare and file the Approval Motion within ten (10) business days of the execution of this Agreement, after Tech USA reviews the Approval Motion. Tech USA will not unreasonably withhold its agreement to the Approval Motion.  Class Counsel further agrees to prepare and file any other documents that are needed to obtain the Court's approval of the Agreement and all exhibits to the Approval Motion and to effectuate dismissal of the Lawsuit.

3.3.    A decision by the Court not to grant the Approval Motion, or a decision by the Court to enter an order granting the Approval Motion with modifications (other than modifications concerning the proposed amount of the Cost and Fee Award) that Class Counsel or Tech USA's Counsel determines in their reasonable and good faith judgment to be material, will be discretionary grounds for Class Counsel or Tech USA's Counsel to terminate this Agreement by providing written notice to the other and to the Court within five (5) business days of receipt of the Court's decision.

3.4.    The Settling Parties agree that this Agreement shall be confidential and that all filings and hearings related to the Agreement shall be under seal, subject to approval of the Court. Class Counsel shall take all additional necessary steps to ensure that the Agreement is filed under seal and kept confidential, including, but not limited to, drafting and filing a mutually agreeable motion requesting that the fully executed Agreement be filed under seal and kept confidential.  The Parties agree that confidentiality is a material term of the Agreement for the sole benefit of Tech USA, which only Tech USA, in its sole discretion, may waiver or modify (or agree to modification).

4.    **Issuance of Settlement Checks and Retention of Un-negotiated Funds**

4.1.    Tech USA shall deliver the Settlement Checks to JOSEPHSON DUNLAP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046 within ~~thirty~~ ten (10) business days after the Effective Date, assuming Class Counsel has provided Tech USA with the required Forms W-9 for its Opt-Ins pursuant to Section 2.4 of this Agreement.  In no event shall the payment of the Settlement Checks be due prior to the Effective Date.

4.2.    Settlement Checks issued to Opt-Ins pursuant to this Agreement shall remain negotiable for the Negotiation Period, a period of one hundred and twenty (120) calendar days from the date they are mailed. Tech USA is not required to re-issue any Settlement Checks to any Opt-Ins who fail to timely negotiate their Settlement Checks.  Tech USA, however, agrees to re-issue checks to the extent that Settlement Checks are not properly or timely delivered due to errors of the postal system.

4.3.    Tech USA shall retain all funds from Settlement Checks that were not negotiated during the Negotiation Period.

5.    **Releases**

5.1.    Upon Class Representative's execution of this Agreement, the Opt-Ins on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Wage and Hour Released Claims.

5.2. Upon executing the Confidential General Release, each of the Opt-Ins and each of his or her heirs, representatives, successors, assigns, and attorneys, shall be deemed to have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all General Released Claims.

5.3. Class Representative shall execute and return a copy of this Agreement to Tech USA's Counsel along with and at the same time as she returns an executed copy of her Confidential General Release.

6. **Payment of the Cost and Fee Award**

6.1. The Cost and Fee Award shall be paid from the Maximum Settlement Amount. Tech USA shall wire or mail the Cost and Fee Award to JOSEPHSON DUNLAP, 11 Greenway Plaza, Suite 3050, Houston, Texas 77046 within ten (10) business days of the Effective Date, assuming Class Counsel has provided Tech USA with the required Forms W-9 for its law firm and the Opt-Ins pursuant to Section 2.4 of this Agreement. In no event shall the payment of the Cost and Fee Award be due prior to the Effective Date.

6.2. The Opt-Ins and Class Counsel agree that they shall neither seek nor be entitled to any additional costs, attorneys' fees, or awards under any theory. The Opt-Ins and Class Counsel further agree that they shall be responsible for justifying the amounts of the Cost and Fee Award to the Court and shall submit, as appropriate, the necessary materials to justify same.

7. **Confidentiality of Agreement Termination of Settlement**

7.1. Pursuant to Section 3.4 of this Agreement, Class Counsel agrees that it shall request that the Court allow it to file this Agreement under seal pursuant to the Federal Rules of Civil Procedure, so that the Agreement will not be published or made available on any website, public records, or in any other way. If the Court refuses to allow this Agreement to be filed under seal, the Settling Parties will work cooperatively and take steps necessary to obtain approval and preserve the confidentiality of the Agreement. The Settling Parties further agree that other than necessary disclosures made to the Court, Class Counsel, and the Opt-Ins shall keep the fact and the terms of settlement, the existence and terms of this Agreement and the attachments hereto, the Settling Parties' settlement negotiations, and all related information strictly confidential (collectively "the Confidential Information"), and shall not disclose such Confidential Information to any third parties (including the media), or directly or indirectly reference or describe such Confidential Information on any websites, blogs, or on social media. Class Counsel and the Opt-Ins each agrees not to publicize in any manner this case, the settlement, the Confidential Information and/or the terms of this Agreement through any means of disclosure, electronic or otherwise. By way of example only, Class Counsel and the Opt-Ins agree that they will not initiate any print, newspaper, television, Internet, social media, or radio advertisements, publications, or flyers discussing the Confidential Information, and will not issue press releases, hold press conferences, engage in any press event, or respond to any press inquiries regarding the Lawsuit, the Confidential Information, and/or this Agreement except to say only in response to direct, unsolicited press inquiries words to the effect that Class Counsel and the Opt-Ins support the settlement and think it is fair to the Opt-Ins. No further comment shall be made.

8.    **Termination of Settlement**

8.1.    Tech USA shall make no payments to anyone under this Agreement in the event that any of the following occurs: (1) the Agreement is not approved in its entirety by the Court, excluding modifications that the parties determine in their reasonable and good faith judgment to not be material modifications; (2) the Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms; or (3) the Judgment does not become a Final Judgment. In the event of one of the above occurrences, the Settling Parties will each bear their own costs and fees with regard to the efforts to carry out the terms of this Agreement. Further, in such event, this Agreement, except for those provisions relating to non-admissibility, confidentiality, and non-admission of liability, shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Settling Parties and it shall not be used in the Lawsuit or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, nunc pro tunc.

8.2.    Tech USA shall have the absolute discretionary right to terminate this Agreement and the terms set forth in this Agreement in the event that any of the following conditions occur:

8.2.1.    this Agreement is construed in any way that would require Tech USA to pay: (i) more than the Maximum Settlement Amount; and/or (ii) any amount(s) not expressly provided for in this Agreement; or

8.2.2.    the Opt-Ins and/or Class Counsel breaches this Agreement.

8.3.    To the extent Tech USA chooses to exercise the right to terminate this Agreement, it must do so through written notice to Class Counsel prior to the Effective Date and within fourteen (14) calendar days of Tech USA learning of the occurrence of the operative condition warranting termination.

8.4.    Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court that reduces the amounts of or eliminates entirely the Cost and Fee Award shall constitute grounds for cancellation or termination of this Agreement or grounds for limiting any other provisions of the Judgment.

9.    **Miscellaneous Provisions**

9.1.    Class Counsel represents and warrants that as of September 4, 2020, all "straight time for overtime" advertising mentioning Tech USA in any medium has been discontinued and will not be resumed if factually inaccurate.

10.    **Miscellaneous Provisions**

10.1.    Tech USA's only obligations to Class Counsel and the Opt-Ins are set forth in this Agreement.

10.2.    This Agreement compromises claims that are contested in good faith, and neither it nor any of its terms shall be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense. The Settling Parties agree that the amounts paid in

connection with this Agreement and the other terms of the settlement were negotiated in good faith by the Settling Parties and reflect an Agreement that was reached voluntarily after consultation with competent legal counsel.

10.3.    The Released Parties specifically and generally deny any and all liability or wrongdoing of any sort with regard to any of the claims asserted in the Lawsuit and make no concessions or admissions of liability of any sort.  Neither this Agreement nor any act performed or document executed pursuant to, or in furtherance of, this Agreement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Wage and Hour Released Claims or any of the General Released Claims or the wrongdoing or liability of the Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal for any reason.

10.4.    This Agreement, along with Exhibit 1 through Exhibit 5 attached hereto, constitutes the entire agreement among the Settling Parties regarding the subject matter discussed herein, and no representations, warranties, or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized herein.  Except as otherwise explicitly provided herein, each Settling Party shall bear its own attorneys' fees and costs.

10.5.    Class Counsel, on behalf of the Opt-Ins, represents that, after consultation with and approval of the Class Representative, it is expressly authorized by the Class Representative to take all appropriate action required or permitted to be taken by the Class Representative pursuant to this Agreement to effect its terms, and is also expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Opt-Ins that it deems appropriate.  Tech USA's Counsel also represents that it is expressly authorized to take all appropriate action required or permitted to be taken by Tech USA pursuant to this Agreement to effect its terms, and also is expressly authorized to enter into any modifications or amendments to this Agreement on behalf of Tech USA that it deems appropriate.

10.6.    Tech USA agrees that, although it filed a Motion For Attorney's Fees [Doc. No. 26], it will file a Motion with the Court to delay the filing of its supporting memorandum and itemized statements of such outside counsel's and inside counsel's attorneys' fees in connection with Document 26, and it will withdraw Document 26 after the Court grants the Approval Motion.

10.7.    This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

10.8.    Whenever this Agreement requires or contemplates that a Settling Party shall or may give notice to another Settling Party, notice shall be provided by e-mail, facsimile, and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

(i) If to Tech USA, then to:

Stefanie R. Moll
Stefanie.Moll@morganlewis.com
Ian A. Wright
ian.wright@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
Facsimile: 713-890-5001


(ii) If to Class Representative, then to:

Michael Josephson
mjosephson@mybackwages.com
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Facsimile: 713-352-3300

10.9.    All Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing this Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

10.10.    This Agreement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Maryland, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of Maryland without giving effect to Maryland's choice of law principles.

10.11.    The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Settling Party. No Settling Party shall be deemed the drafter of this Agreement. The Settling Parties acknowledge that the terms of this Agreement are contractual and are the product of arms-length negotiations among the Settling Parties and their respective counsel. Each Settling Party and its counsel cooperated in the drafting and preparation of this Agreement.

10.12.    Neither Class Counsel nor any other attorneys acting for, or purporting to act for, the Opt-Ins may recover or seek to recover any amounts for attorneys' fees, costs, awards, or other disbursements from the Maximum Settlement Amount or otherwise from the Released Parties except as expressly provided herein.

10.13.    This Agreement may not be changed, altered, or modified, except in a writing signed by the Class Representative, Class Counsel, Tech USA, and Tech USA's Counsel and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Settling Parties.

10.14.  Paragraph titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

**11.**     **Attorneys' Fees.**

11.1.  Class Counsel acknowledges and agrees that the Cost and Fee Award, if approved, will be the only attorneys' fees and costs that Class Counsel will be recovering or otherwise receiving in connection with the Lawsuit.  Class Counsel further acknowledges and agrees that Class Counsel's attorneys' fees and costs for future actions (if any) against Tech USA will not commence, nor shall begin to accrue, until after Class Counsel's work (beginning on or after September 5, 2020) on any such future matters commences in the future, regardless of whether intake of, legal advice to, or other communications of any nature whatsoever with current or former Tech USA employees (other than the Opt-Ins) occurred in connection with the Lawsuit, or, in any event or other connection prior to September 4, 2020.

IN WITNESS WHEREOF, the Class Representative, Class Counsel, and Tech USA indicate their intent to be fully bound by the terms of this Agreement by signing in the spaces provided below:

**PLAINTIFF:**          Mattie Lillard |Oct 20, 2020 17:35 EDT|          Date: Oct 20, 2020 , 2020

                                Mattie Lillard

**CLASS COUNSEL:**          Michael Josephson          Date: 10/24 , 2020
On behalf of Class Counsel

**DEFENDANT:**          Tech USA          Date: 11/10/2020 , 2020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTIE LILLARD,                          §
                                         §
                                         §
Plaintiff,                               §
                                         §
v.                                       §          Civil Action No. ADC-20-300
                                         §
TECH USA, INC.                           §
                                         §
                                         §
Defendant.                               §

**CONFIDENTIAL GENERAL RELEASE**

This Confidential General Release ("General Release") is entered into by and between Class Representative Mattie Lillard ("Class Representative") and Defendant Tech USA, Inc. and its affiliates including, without limitation, Tech USA, LLC (collectively "Tech USA") contemporaneously with and pursuant to the terms and conditions of the Confidential Settlement Agreement and Release ("Agreement") to which this General Release is attached. The terms and definitions of the Agreement are incorporated by reference in this General Release as if fully set forth herein unless otherwise defined herein.

1.    **General Release.** In consideration of Tech USA's agreement to waive its right to seek and collect outside counsel and inside counsel attorneys' fees in connection with its motion to compel arbitration filed in the Lawsuit and granted by the Court under Doc No 24 and in exchange for the gross Settlement Payment of Nine Hundred Sixty-Eight Dollars and Forty-Seven Cents ($968.47), Class Representative releases and forever discharges the Released Parties from any and all claims and causes of action whatsoever (except for claims arising specifically from a breach of the Agreement by Released Parties), whether known or unknown, arising out of or related to Class Representative's employment with any of the Released Parties and any other events or transactions involving the Released Parties that precede the date of this General Release. The claims and causes of action released by Class Representative include, but are not limited to, the following: contract claims; claims for salary, incentive payments, benefits, bonuses, overtime, overtime paid as alleged straight time, misclassification, salary docking, severance pay, equity incentive units, contest wins/bonuses, commissions, personal time off (PTO), and/or vacation pay; claims sounding in negligence or tort; fraud claims; claims for medical bills; all matters in law, in equity, or pursuant to statute, including, but not limited to, damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; 42 U.S.C. § 1981; the Employee Retirement Income Security Act; the Genetic Information Nondiscrimination Act; the Family and Medical Leave Act; the FLSA; the North Carolina Equal Employment Practices Act; the North Carolina Persons with Disabilities Protection Act; the North Carolina Civil Rights Law; the North Carolina Lawful Products Use Law; the North Carolina Hemoglobin/Genetic Information Anti-Discrimination Law; the North Carolina Retaliatory

Employment Discrimination Act; the North Carolina Leave for Parent Involvement in Schools Law; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting or related to (i) Class Representative's employment with any of the Released Parties and/or (ii) any other events or transactions involving the Released Parties. This General Release does not apply to any claims or rights that may arise after the date Class Representative signs this General Release, to vested rights under Tech USA's employee benefit plans, if any, and as applicable, to any claim for workers' compensation benefits, or to claims that the controlling law states may not be released by settlement.

2.    **Confidentiality.** Class Representative agrees that Class Representative shall keep the terms and existence of this General Release confidential to the same extent that Class Representative is required to keep the terms and existence of the Agreement confidential (including, without limitation, as provided in Section 7.1 of the Agreement). Without limiting the generality of the foregoing, Class Representative further agrees that Class Representative will not disclose, directly or indirectly, the existence or terms of this General Release to any third parties, except that Class Representative may disclose the existence or terms of this General Release to Class Representative's legal and tax advisors and/or Class Representative's spouse, and as to all such persons to whom disclosure is made, the disclosure must be made with the condition that the persons receiving such information maintain the information in strict confidence. Nothing in this paragraph is intended to preclude Class Representative from disclosing the existence and terms of this General Release as necessary to enforce its terms or in connection with a claim for breach of this General Release. Class Representative agrees, however, that if Class Representative or Class Representative's attorneys are required to disclose any of the terms of this General Release and/or of the Agreement pursuant to subpoena or other court process, Class Representative will provide Tech USA with prompt advance notice so that it may seek a protective order or take other appropriate action to protect the confidentiality of this General Release and/or of the Agreement (as applicable). In any such case, Class Representative and/or Class Representative's attorneys will endeavor to furnish only the terms of this General Release and/or of the Agreement (as applicable) that are legally required to be furnished. Class Representative acknowledges that confidentiality is a material term of this General Release and of the Agreement and that irreparable harm will result to Tech USA if Class Representative breaches the terms of this Section by improperly disclosing the existence or terms of this General Release and/or of the Agreement (as applicable).

3.    **Reports to Government Entities.** Nothing in this General Release, including the Confidentiality clause in Section 2, restricts or prohibits Class Representative from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the U.S. Department of Labor, the U.S. National Labor Relations Board, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Class Representative is waiving Class Representative's right to receive any individual monetary relief from any of the Released Parties resulting from or in connection with any such claims, communications, reports, or conduct, regardless of whether Class Representative or another party has filed them, and in the event Class Representative obtains such monetary relief, Tech USA will be

entitled to an offset for the payments made pursuant to this General Release. This General Release does not limit Class Representative's right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law. Class Representative does not need the prior authorization of Tech USA to engage in conduct protected by this Section, and Class Representative does not need to notify Tech USA that Class Representative has engaged in any such conduct.

Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

4.      **Future Application/Future Employment**. Class Representative agrees not to apply for employment with Tech USA at any time in the future. Class Representative further waives and releases any right to be considered for such employment by Tech USA and agrees that any refusal or denial of employment in the future shall not constitute discrimination or retaliation by Tech USA. Tech USA and Class Representative agree, however, that nothing contained in this paragraph shall prohibit Tech USA, in its sole discretion, from hiring Class Representative in the future although it is under no obligation whatsoever to hire Class Representative, engage Class Representative, or consider Class Representative for employment.

5.      **Non-Disparagement**. Class Representative agrees not to commit any act or make any statement, written or oral, to the press or any individual or entity, that is, or could reasonably be interpreted as, detrimental to the business, reputation, or good will of the Released Parties, including, without limitation, disparaging or embarrassing the Released Parties or their officers, directors, members, agents, attorneys, and/or other personnel or employees.

6.      **No Filing of Lawsuit or Other Claim**. Other than as provided in this General Release, Class Representative agrees, promises, and covenants that neither Class Representative, nor any person, organization, or other entity acting on Class Representative's behalf, has or will file a lawsuit, complaint, charge, or claim (collectively "Action"), nor sue, cause or permit to be filed, charged or claimed, or participate as a party in any Action for damages against any of the Released Parties involving any matter occurring from the beginning of time up to the date of the execution of this General Release or involving any claims, demands, causes of action, obligations, damages, or liabilities that are the subject of this General Release and that precede the date of execution of this General Release.

Mattie Lillard indicates her acceptance of   the terms of this Confidential General Release by signing below:

_Mil_
Mattie Lillard (Oct 16, 2020 17:31 EDT)

Date:   Oct 16, 2020

3

Tech USA indicates its acceptance of the terms
of this Confidential General Release by signing
below:

_____

Date:_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTIE LILLARD,                           §
                                          §
                                          §
Plaintiff,                                §
                                          §
v.                                        §        Civil Action No. ADC-20-300
                                          §
TECH USA, INC.                            §
                                          §
                                          §
                                          §
Defendant.                                §

## CONFIDENTIAL GENERAL RELEASE

This Confidential General Release ("General Release") is entered into by and between Opt-In Arielle Evans ("Opt-In") and Defendant Tech USA, Inc. and its affiliates including, without limitation, Tech USA, LLC (collectively "Tech USA") contemporaneously with and pursuant to the terms and conditions of the Confidential Settlement Agreement and Release ("Agreement") to which this General Release is attached.  The terms and definitions of the Agreement are incorporated by reference in this General Release as if fully set forth herein unless otherwise defined herein.

1.    **The Agreement.** Opt-in agrees that Opt-In is bound by all of the terms of the Agreement.

2.    **General Release.** In consideration of Tech USA's agreement to waive its right to seek and collect outside counsel and inside counsel attorneys' fees in connection with its motion to compel arbitration filed in the Lawsuit and granted by the Court under Doc No 24 and in exchange for the gross Settlement Payment of Nine Hundred Seventy-Two Dollars and Ninety-Seven Cents ($972.97), Opt-In releases and forever discharges the Released Parties from any and all claims and causes of action whatsoever (except for claims arising specifically from a breach of the Agreement by Released Parties), whether known or unknown, arising out of or related to Opt-In's employment with any of the Released Parties and any other events or transactions involving the Released Parties that precede the date of this General Release.  The claims and causes of action released by Opt-In include, but are not limited to, the following: contract claims; claims for salary, incentive payments, benefits, bonuses, overtime, overtime paid as alleged straight time, misclassification, salary docking, severance pay, equity incentive units, contest wins/bonuses, commissions, personal time off (PTO), and/or vacation pay; claims sounding in negligence or tort; fraud claims; claims for medical bills; all matters in law, in equity, or pursuant to statute, including, but not limited to, damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; 42 U.S.C. § 1981; the Employee Retirement Income Security Act; the Genetic Information Nondiscrimination Act; the Family and Medical Leave Act; the FLSA; Maryland's anti-discrimination statute (Md. Code Ann., State Gov't §§ 20-101–20-1203); the Maryland Fair Employment Practices Act; the Maryland Reasonable Accommodations for Disabilities Due to

Pregnancy Act; the Maryland Deployment of Family Members in the Armed Forces Act; the Maryland Equal Pay For Equal Work Law; the Maryland Medical Information Discrimination Law; the Maryland Maternity Leave Law (Maryland Flexible Leave Act); the Maryland WARN Laws; the Maryland Occupational Safety and Health Act; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting or related to (i) Opt-In's employment with any of the Released Parties and/or (ii) any other events or transactions involving the Released Parties. This General Release does not apply to any claims or rights that may arise after the date Opt-In signs this General Release, to vested rights under Tech USA's employee benefit plans, if any, and as applicable, to any claim for workers' compensation benefits, or to claims that the controlling law states may not be released by settlement.

3.    **Confidentiality.** Opt-In agrees that Opt-In shall keep the terms and existence of this General Release confidential to the same extent that Opt-In is required to keep the terms and existence of the Agreement confidential (including, without limitation, as provided in Section 7.1 of the Agreement). Without limiting the generality of the foregoing, Opt-In further agrees that Opt-In will not disclose, directly or indirectly, the existence or terms of this General Release to any third parties, except that Opt-In may disclose the existence or terms of this General Release to Opt-In's legal and tax advisors and/or Opt-In's spouse, and as to all such persons to whom disclosure is made, the disclosure must be made with the condition that the persons receiving such information maintain the information in strict confidence. Nothing in this paragraph is intended to preclude Opt-In from disclosing the existence and terms of this General Release as necessary to enforce its terms or in connection with a claim for breach of this General Release. Opt-In agrees, however, that if Opt-In or Opt-In's attorneys are required to disclose any of the terms of this General Release and/or of the Agreement pursuant to subpoena or other court process, Opt-In will provide Tech USA with prompt advance notice so that it may seek a protective order or take other appropriate action to protect the confidentiality of this General Release and/or the Agreement (as applicable). In any such case, Opt-In and/or Opt-In's attorneys will endeavor to furnish only the terms of this General Release and/or of the Agreement (as applicable) that are legally required to be furnished. Opt-In acknowledges that confidentiality is a material term of this General Release and of the Agreement and that irreparable harm will result to Tech USA if Opt-In breaches the terms of this Section by improperly disclosing the existence or terms of this General Release and/or of the Agreement (as applicable).

4.    **Reports to Government Entities.** Nothing in this General Release, including the Confidentiality clause in Section 3, restricts or prohibits Opt-In from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the U.S. Department of Labor, the U.S. National Labor Relations Board, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Opt-In is waiving Opt-In's right to receive any individual monetary relief from any of the Released Parties resulting from or in connection with any such claims, communications, reports, or conduct, regardless of whether Opt-In or another party has filed them, and in the event Opt-In obtains such monetary relief, Tech USA will be entitled to an offset for the payments made pursuant to this General Release. This General Release does not limit Opt-In's right to receive an award from any Regulator

that provides awards for providing information relating to a potential violation of law.  Opt-In does not need the prior authorization of Tech USA to engage in conduct protected by this Section, and Opt-In does not need to notify Tech USA that Opt-In has engaged in any such conduct.

Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

**5.      Future Application/Future Employment.** Opt-In agrees not to apply for employment with Tech USA at any time in the future.  Opt-In further waives and releases any right to be considered for such employment by Tech USA and agrees that any refusal or denial of employment in the future shall not constitute discrimination or retaliation by Tech USA.  Tech USA and Opt-In agree, however, that nothing contained in this paragraph shall prohibit Tech USA, in its sole discretion, from hiring Opt-In in the future although it is under no obligation whatsoever to hire Opt-In, engage Opt-In, or consider Opt-In for employment.

**6.      Non-Disparagement.** Opt-In agrees not to commit any act or make any statement, written or oral, to the press or any individual or entity, that is, or could reasonably be interpreted as, detrimental to the business, reputation, or good will of the Released Parties, including, without limitation, disparaging or embarrassing the Released Parties or their officers, directors, members, agents, attorneys, and/or other personnel or employees.

**7.      No Filing of Lawsuit or Other Claim.** Other than as provided in this General Release, Opt-In agrees, promises, and covenants that neither Opt-In, nor any person, organization, or other entity acting on Opt-In's behalf, has or will file a lawsuit, complaint, charge, or claim (collectively "Action"), nor sue, cause or permit to be filed, charged or claimed, or participate as a party in any Action for damages against any of the Released Parties involving any matter occurring from the beginning of time up to the date of the execution of this General Release or involving any claims, demands, causes of action, obligations, damages, or liabilities that are the subject of this General Release and that precede the date of execution of this General Release.

Arielle Evans indicates her acceptance of the terms of this Confidential General Release and of the terms of the Agreement by signing below:



Arielle Evans (Oct 16, 2020 16:42 EDT)

Date: Oct 16, 2020

Tech USA indicates its acceptance of the terms of this Confidential General Release by signing below:

_____

Date: 11/10/2020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTIE LILLARD,                          §
                                         §
                                         §
Plaintiff,                               §
                                         §
                                         §
v.                                       §        Civil Action No. ADC-20-300
                                         §
TECH USA, INC.                           §
                                         §
                                         §
                                         §
        Defendant.                       §

## CONFIDENTIAL GENERAL RELEASE

This Confidential General Release ("General Release") is entered into by and between Opt-In Haley Perry ("Opt-In") and Defendant Tech USA, Inc. and its affiliates including, without limitation, Tech USA, LLC (collectively "Tech USA") contemporaneously with and pursuant to the terms and conditions of the Confidential Settlement Agreement and Release ("Agreement") to which this General Release is attached. The terms and definitions of the Agreement are incorporated by reference in this General Release as if fully set forth herein unless otherwise defined herein.

1.      **The Agreement.** Opt-in agrees that Opt-In is bound by all of the terms of the Agreement.

2.      **General Release.** In consideration of Tech USA's agreement to waive its right to seek and collect outside counsel and inside counsel attorneys' fees in connection with its motion to compel arbitration filed in the Lawsuit and granted by the Court under Doc No 24 and in exchange for the gross Settlement Payment of Four Thousand Six Hundred Eighty-Four Dollars and Sixty-Eight Cents ($4,684.68), Opt-In releases and forever discharges the Released Parties from any and all claims and causes of action whatsoever (except for claims arising specifically from a breach of the Agreement by Released Parties), whether known or unknown, arising out of or related to Opt-In's employment with any of the Released Parties and any other events or transactions involving the Released Parties that precede the date of this General Release. The claims and causes of action released by Opt-In include, but are not limited to, the following: contract claims; claims for salary, incentive payments, benefits, bonuses, overtime, overtime paid as alleged straight time, misclassification, salary docking, severance pay, equity incentive units, contest wins/bonuses, commissions, personal time off (PTO), and/or vacation pay; claims sounding in negligence or tort; fraud claims; claims for medical bills; all matters in law, in equity, or pursuant to statute, including, but not limited to, damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; 42 U.S.C. § 1981; the Employee Retirement Income Security Act; the Genetic Information Nondiscrimination Act; the Family and Medical Leave Act; the FLSA; the North Carolina Equal Employment Practices Act; the North Carolina Persons with Disabilities Protection Act; the North Carolina Civil Rights Law; the North Carolina Lawful Products

Use Law; the North Carolina Hemoglobin/Genetic Information Anti-Discrimination Law; the North Carolina Retaliatory Employment Discrimination Act; the North Carolina Leave for Parent Involvement in Schools Law; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting or related to (i) Opt-In's employment with any of the Released Parties and/or (ii) any other events or transactions involving the Released Parties. This General Release does not apply to any claims or rights that may arise after the date Opt-In signs this General Release, to vested rights under Tech USA's employee benefit plans, if any, and as applicable, to any claim for workers' compensation benefits, or to claims that the controlling law states may not be released by settlement.

3.    **Confidentiality.** Opt-In agrees that Opt-In shall keep the terms and existence of this General Release confidential to the same extent that Opt-In is required to keep the terms and existence of the Agreement confidential (including, without limitation, as provided in Section 7.1 of the Agreement). Without limiting the generality of the foregoing, Opt-In further agrees that Opt-In will not disclose, directly or indirectly, the existence or terms of this General Release to any third parties, except that Opt-In may disclose the existence or terms of this General Release to Opt-In's legal and tax advisors and/or Opt-In's spouse, and as to all such persons to whom disclosure is made, the disclosure must be made with the condition that the persons receiving such information maintain the information in strict confidence. Nothing in this paragraph is intended to preclude Opt-In from disclosing the existence and terms of this General Release as necessary to enforce its terms or in connection with a claim for breach of this General Release. Opt-In agrees, however, that if Opt-In or Opt-In's attorneys are required to disclose any of the terms of this General Release and/or of the Agreement pursuant to subpoena or other court process, Opt-In will provide Tech USA with prompt advance notice so that it may seek a protective order or take other appropriate action to protect the confidentiality of this General Release and/or of the Agreement (as applicable). In any such case, Opt-In and/or Opt-In's attorneys will endeavor to furnish only the terms of this General Release and/or of the Agreement (as applicable) that are legally required to be furnished. Opt-In acknowledges that confidentiality is a material term of this General Release and of the Agreement and that irreparable harm will result to Tech USA if Opt-In breaches the terms of this Section by improperly disclosing the existence or terms of this General Release and/or of the Agreement (as applicable).

4.    **Reports to Government Entities.** Nothing in this General Release, including the Confidentiality clause in Section 3, restricts or prohibits Opt-In from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the U.S. Department of Labor, the U.S. National Labor Relations Board, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Opt-In is waiving Opt-In's right to receive any individual monetary relief from any of the Released Parties resulting from or in connection with any such claims, communications, reports, or conduct, regardless of whether Opt-In or another party has filed them, and in the event Opt-In obtains such monetary relief, Tech USA will be entitled to an offset for the payments made pursuant to this General Release. This General Release does not limit Opt-In's right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law. Opt-In does

not need the prior authorization of Tech USA to engage in conduct protected by this Section, and Opt-In does not need to notify Tech USA that Opt-In has engaged in any such conduct.

Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

**5.** **Future Application/Future Employment.** Opt-In agrees not to apply for employment with Tech USA at any time in the future. Opt-In further waives and releases any right to be considered for such employment by Tech USA and agrees that any refusal or denial of employment in the future shall not constitute discrimination or retaliation by Tech USA. Tech USA and Opt-In agree, however, that nothing contained in this paragraph shall prohibit Tech USA, in its sole discretion, from hiring Opt-In in the future although it is under no obligation whatsoever to hire Opt-In, engage Opt-In, or consider Opt-In for employment.

**6.** **Non-Disparagement.** Opt-In agrees not to commit any act or make any statement, written or oral, to the press or any individual or entity, that is, or could reasonably be interpreted as, detrimental to the business, reputation, or good will of the Released Parties, including, without limitation, disparaging or embarrassing the Released Parties or their officers, directors, members, agents, attorneys, and/or other personnel or employees.

**7.** **No Filing of Lawsuit or Other Claim.** Other than as provided in this General Release, Opt-In agrees, promises, and covenants that neither Opt-In, nor any person, organization, or other entity acting on Opt-In's behalf, has or will file a lawsuit, complaint, charge, or claim (collectively "Action"), nor sue, cause or permit to be filed, charged or claimed, or participate as a party in any Action for damages against any of the Released Parties involving any matter occurring from the beginning of time up to the date of the execution of this General Release or involving any claims, demands, causes of action, obligations, damages, or liabilities that are the subject of this General Release and that precede the date of execution of this General Release.

Haley Perry indicates her acceptance of the terms of this Confidential General Release and of the terms of the Agreement by signing below:

_Haley Perry_
Haley Perry (Oct 16, 2020 17:43 EDT)

Date: Oct 16, 2020

Tech USA indicates its acceptance of the terms of this Confidential General Release by signing below:

_Sus DeWan_

Date:___1/10/2020___

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTIE LILLARD,                          §
                                         §
                                         §
Plaintiff,                               §
                                         §
                                         §
v.                                       §        Civil Action No. ADC-20-300
                                         §
TECH USA, INC.                           §
                                         §
                                         §
Defendant.                               §

**CONFIDENTIAL GENERAL RELEASE**

This Confidential General Release ("General Release") is entered into by and between Opt-In Rijad Alibasic ("Opt-In") and Defendant Tech USA, Inc. and its affiliates including, without limitation, Tech USA, LLC (collectively "Tech USA") contemporaneously with and pursuant to the terms and conditions of the Confidential Settlement Agreement and Release ("Agreement") to which this General Release is attached. The terms and definitions of the Agreement are incorporated by reference in this General Release as if fully set forth herein unless otherwise defined herein.

    **1.**    **The Agreement.** Opt-in agrees that Opt-In is bound by all of the terms of the Agreement.

    **2.**    **General Release.** In consideration of Tech USA's agreement to waive its right to seek and collect outside counsel and inside counsel attorneys' fees in connection with its motion to compel arbitration filed in the Lawsuit and granted by the Court under Doc No 24 and in exchange for the gross Settlement Payment of Five Thousand Seven Hundred Fifty-Four Dollars and Fifty Cents ($5,754.50), Opt-In releases and forever discharges the Released Parties from any and all claims and causes of action whatsoever (except for claims arising specifically from a breach of the Agreement by Released Parties), whether known or unknown, arising out of or related to Opt-In's employment with any of the Released Parties and any other events or transactions involving the Released Parties that precede the date of this General Release. The claims and causes of action released by Opt-In include, but are not limited to, the following: contract claims; claims for salary, incentive payments, benefits, bonuses, overtime, overtime paid as alleged straight time, misclassification, salary docking, severance pay, equity incentive units, contest wins/bonuses, commissions, personal time off (PTO), and/or vacation pay; claims sounding in negligence or tort; fraud claims; claims for medical bills; all matters in law, in equity, or pursuant to statute, including, but not limited to, damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; 42 U.S.C. § 1981; the Employee Retirement Income Security Act; the Genetic Information Nondiscrimination Act; the Family and Medical Leave Act; the FLSA; the Illinois Human Rights Act; the Illinois Equal Pay Act of 2003; the Illinois Equal Wage Act; the Illinois Religious Freedom Restoration Act; the Illinois Whistleblower Act; the Illinois Family

Military Leave Act; the Illinois WARN Act; the Illinois Right to Privacy in the Workplace Act; the Illinois Union Employee Health and Benefits Protection Act; the Illinois Employment Contract Act; the Illinois Labor Dispute Act; the Illinois Victims' Economic Security and Safety Act; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting or related to (i) Opt-In's employment with any of the Released Parties and/or (ii) any other events or transactions involving the Released Parties. This General Release does not apply to any claims or rights that may arise after the date Opt-In signs this General Release, to vested rights under Tech USA's employee benefit plans, if any, and as applicable, to any claim for workers' compensation benefits, or to claims that the controlling law states may not be released by settlement.

3.    **Confidentiality.** Opt-In agrees that Opt-In shall keep the terms and existence of this General Release confidential to the same extent that Opt-In is required to keep the terms and existence of the Agreement confidential (including, without limitation, as provided in Section 7.1 of the Agreement). Without limiting the generality of the foregoing, Opt-In further agrees that Opt-In will not disclose, directly or indirectly, the existence or terms of this General Release to any third parties, except that Opt-In may disclose the existence or terms of this General Release to Opt-In's legal and tax advisors and/or Opt-In's spouse, and as to all such persons to whom disclosure is made, the disclosure must be made with the condition that the persons receiving such information maintain the information in strict confidence. Nothing in this paragraph is intended to preclude Opt-In from disclosing the existence and terms of this General Release as necessary to enforce its terms or in connection with a claim for breach of this General Release. Opt-In agrees, however, that if Opt-In or Opt-In's attorneys are required to disclose any of the terms of this General Release and/or of the Agreement pursuant to subpoena or other court process, Opt-In will provide Tech USA with prompt advance notice so that it may seek a protective order or take other appropriate action to protect the confidentiality of this General Release and/or of the Agreement (as applicable). In any such case, Opt-In and/or Opt-In's attorneys will endeavor to furnish only the terms of this General Release and/or of the Agreement (as applicable) that are legally required to be furnished. Opt-In acknowledges that confidentiality is a material term of this General Release and of the Agreement and that irreparable harm will result to Tech USA if Opt-In breaches the terms of this Section by improperly disclosing the existence or terms of this General Release and/or of the Agreement (as applicable).

4.    **Reports to Government Entities.** Nothing in this General Release, including the Confidentiality clause in Section 3, restricts or prohibits Opt-In from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the U.S. Department of Labor, the U.S. National Labor Relations Board, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Opt-In is waiving Opt-In's right to receive any individual monetary relief from any of the Released Parties resulting from or in connection with any such claims, communications, reports, or conduct, regardless of whether Opt-In or another party has filed them, and in the event Opt-In obtains such monetary relief, Tech USA will be entitled to an offset for the payments made pursuant to this General Release. This General Release does not limit Opt-In's right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law. Opt-In does

not need the prior authorization of Tech USA to engage in conduct protected by this Section, and Opt-In does not need to notify Tech USA that Opt-In has engaged in any such conduct.

Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

5.    **Future Application/Future Employment.** Opt-In agrees not to apply for employment with Tech USA at any time in the future. Opt-In further waives and releases any right to be considered for such employment by Tech USA and agrees that any refusal or denial of employment in the future shall not constitute discrimination or retaliation by Tech USA. Tech USA and Opt-In agree, however, that nothing contained in this paragraph shall prohibit Tech USA, in its sole discretion, from hiring Opt-In in the future although it is under no obligation whatsoever to hire Opt-In, engage Opt-In, or consider Opt-In for employment.

6.    **Non-Disparagement.** Opt-In agrees not to commit any act or make any statement, written or oral, to the press or any individual or entity, that is, or could reasonably be interpreted as, detrimental to the business, reputation, or good will of the Released Parties, including, without limitation, disparaging or embarrassing the Released Parties or their officers, directors, members, agents, attorneys, and/or other personnel or employees.

7.    **No Filing of Lawsuit or Other Claim.** Other than as provided in this General Release, Opt-In agrees, promises, and covenants that neither Opt-In, nor any person, organization, or other entity acting on Opt-In's behalf, has or will file a lawsuit, complaint, charge, or claim (collectively "Action"), nor sue, cause or permit to be filed, charged or claimed, or participate as a party in any Action for damages against any of the Released Parties involving any matter occurring from the beginning of time up to the date of the execution of this General Release or involving any claims, demands, causes of action, obligations, damages, or liabilities that are the subject of this General Release and that precede the date of execution of this General Release.

Rijad Alibasic indicates his acceptance of the terms of this Confidential General Release and of the terms of the Agreement by signing below:

*Rijad Alibasic*
Rijad Alibasic (Oct 16, 2020 15:46 CDT)

Date: Oct 16, 2020

Tech USA indicates its acceptance of the terms
of this Confidential General Release by signing
below:

_Sue Dulars_____

Date: _11/10/2020_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTIE LILLARD,

§
§
§

Plaintiff,

§
§

v.

§        Civil Action No. ADC-20-300

§

TECH USA, INC.

§
§
§

Defendant.

§

## CONFIDENTIAL GENERAL RELEASE

This Confidential General Release ("General Release") is entered into by and between Opt-In Courtney Samms ("Opt-In") and Defendant Tech USA, Inc. and its affiliates including, without limitation, Tech USA, LLC (collectively "Tech USA") contemporaneously with and pursuant to the terms and conditions of the Confidential Settlement Agreement and Release ("Agreement") to which this General Release is attached. The terms and definitions of the Agreement are incorporated by reference in this General Release as if fully set forth herein unless otherwise defined herein.

1.     **The Agreement.** Opt-in agrees that Opt-In is bound by all of the terms of the Agreement.

2.     **General Release.** In consideration of Tech USA's agreement to waive its right to seek and collect outside counsel and inside counsel attorneys' fees in connection with its motion to compel arbitration filed in the Lawsuit and granted by the Court under Doc No 24 and in exchange for the gross Settlement Payment of Nine Thousand Three Hundred Sixty-Nine Dollars and Thirty-Seven Cents ($9,369.37), Opt-In releases and forever discharges the Released Parties from any and all claims and causes of action whatsoever (except for claims arising specifically from a breach of the Agreement by Released Parties), whether known or unknown, arising out of or related to Opt-In's employment with any of the Released Parties and any other events or transactions involving the Released Parties that precede the date of this General Release. The claims and causes of action released by Opt-In include, but are not limited to, the following: contract claims; claims for salary, incentive payments, benefits, bonuses, overtime, overtime paid as alleged straight time, misclassification, salary docking, severance pay, equity incentive units, contest wins/bonuses, commissions, personal time off (PTO), and/or vacation pay; claims sounding in negligence or tort; fraud claims; claims for medical bills; all matters in law, in equity, or pursuant to statute, including, but not limited to, damages, attorneys' fees, costs, and expenses; and, without limiting the generality of the foregoing, to all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; 42 U.S.C. § 1981; the Employee Retirement Income Security Act; the Genetic Information Nondiscrimination Act; the Family and Medical Leave Act; the FLSA; the North Carolina Equal Employment Practices Act; the North Carolina Persons with Disabilities Protection Act; the North Carolina Civil Rights Law; the North Carolina Lawful

Products Use Law; the North Carolina Hemoglobin/Genetic Information Anti-Discrimination Law; the North Carolina Retaliatory Employment Discrimination Act; the North Carolina Leave for Parent Involvement in Schools Law; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting or related to (i) Opt-In's employment with any of the Released Parties and/or (ii) any other events or transactions involving the Released Parties. This General Release does not apply to any claims or rights that may arise after the date Opt-In signs this General Release, to vested rights under Tech USA's employee benefit plans, if any, and as applicable, to any claim for workers' compensation benefits, or to claims that the controlling law states may not be released by settlement.

3.   **Confidentiality.** Opt-In agrees that Opt-In shall keep the terms and existence of this General Release confidential to the same extent that Opt-In is required to keep the terms and existence of the Agreement confidential (including, without limitation, as provided in Section 7.1 of the Agreement). Without limiting the generality of the foregoing, Opt-In further agrees that Opt-In will not disclose, directly or indirectly, the existence or terms of this General Release to any third parties, except that Opt-In may disclose the existence or terms of this General Release to Opt-In's legal and tax advisors and/or Opt-In's spouse, and as to all such persons to whom disclosure is made, the disclosure must be made with the condition that the persons receiving such information maintain the information in strict confidence. Nothing in this paragraph is intended to preclude Opt-In from disclosing the existence and terms of this General Release as necessary to enforce its terms or in connection with a claim for breach of this General Release. Opt-In agrees, however, that if Opt-In or Opt-In's attorneys are required to disclose any of the terms of this General Release and/or of the Agreement pursuant to subpoena or other court process, Opt-In will provide Tech USA with prompt advance notice so that it may seek a protective order or take other appropriate action to protect the confidentiality of this General Release and/or of the Agreement (as applicable). In any such case, Opt-In and/or Opt-In's attorneys will endeavor to furnish only the terms of this General Release and/or of the Agreement (as applicable) that are legally required to be furnished. Opt-In acknowledges that confidentiality is a material term of this General Release and of the Agreement and that irreparable harm will result to Tech USA if Opt-In breaches the terms of this Section by improperly disclosing the existence or terms of this General Release and/or of the Agreement (as applicable).

4.   **Reports to Government Entities.** Nothing in this General Release, including the Confidentiality clause in Section 3, restricts or prohibits Opt-In from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the U.S. Department of Labor, the U.S. National Labor Relations Board, the U.S. Department of Justice, the U.S. Securities and Exchange Commission, the U.S. Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Opt-In is waiving Opt-In's right to receive any individual monetary relief from any of the Released Parties resulting from or in connection with any such claims, communications, reports, or conduct, regardless of whether Opt-In or another party has filed them, and in the event Opt-In obtains such monetary relief, Tech USA will be entitled to an offset for the payments made pursuant to this General Release. This General Release does not limit Opt-In's right to receive an award from any Regulator

that provides awards for providing information relating to a potential violation of law. Opt-In does not need the prior authorization of Tech USA to engage in conduct protected by this Section, and Opt-In does not need to notify Tech USA that Opt-In has engaged in any such conduct.

Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

     5.    **Future Application/Future Employment.** Opt-In agrees not to apply for employment with Tech USA at any time in the future. Opt-In further waives and releases any right to be considered for such employment by Tech USA and agrees that any refusal or denial of employment in the future shall not constitute discrimination or retaliation by Tech USA. Tech USA and Opt-In agree, however, that nothing contained in this paragraph shall prohibit Tech USA, in its sole discretion, from hiring Opt-In in the future although it is under no obligation whatsoever to hire Opt-In, engage Opt-In, or consider Opt-In for employment.

     6.    **Non-Disparagement.** Opt-In agrees not to commit any act or make any statement, written or oral, to the press or any individual or entity, that is, or could reasonably be interpreted as, detrimental to the business, reputation, or good will of the Released Parties, including, without limitation, disparaging or embarrassing the Released Parties or their officers, directors, members, agents, attorneys, and/or other personnel or employees.

     7.    **No Filing of Lawsuit or Other Claim.** Other than as provided in this General Release, Opt-In agrees, promises, and covenants that neither Opt-In, nor any person, organization, or other entity acting on Opt-In's behalf, has or will file a lawsuit, complaint, charge, or claim (collectively "Action"), nor sue, cause or permit to be filed, charged or claimed, or participate as a party in any Action for damages against any of the Released Parties involving any matter occurring from the beginning of time up to the date of the execution of this General Release or involving any claims, demands, causes of action, obligations, damages, or liabilities that are the subject of this General Release and that precede the date of execution of this General Release.

Courtney Samms indicates her acceptance of the terms of this Confidential General Release and of the terms of the Agreement by signing below:



Courtney E Samms (Oct 16, 2020 17:29 EDT)

Date: Oct 16, 2020

Tech USA indicates its acceptance of the terms of this Confidential General Release by signing below:

_____

Date:_____